JORGENSEN v. GRAND RAPIDS & INDIANA RAILWAY CO.

1. PLEADING—MASTER AND SERVANT—DEATH—INJURY TO SERVANT
—AMENDMENTS—INTERSTATE COMMERCE—RAILROADS — EMPLOY-
ER'S LIABILITY.

Where plaintiff brought an action under the Michigan stat-
ute (Act No. 104, Pub. Acts 1909), for the death of a fire-
man on defendant railway, and two years later, at the
trial, asked for leave to amend the declaration so as to
bring the claim within the Federal act relating to em-
ployer's liability (35 U. S. Stat. 63, as amended; U. S.
Comp. Stat. 1913, §§ 8657-8665), not referred to in the
pleading, which, however, alleged that the defendant
owned and operated a system extending through Michigan
and Indiana, the request, which did not involve an addi-
tion of new matter, was rightfully granted and did not
operate to introduce a new cause of action.[1]

2. SAME—CONSTITUTIONAL LAW.

The Federal statute is a general law and is in force in Mich-
igan as it is everywhere else, and the case was not like
amending the declaration so as to plead a foreign statute.

3. ESTATES OF DECEDENTS—DEATH ACT.

The death act (3 Comp. Laws, § 10436, 5 How. Stat. [2d
Ed.] § 13702) is applicable only to cases of instantaneous
death. Actions for death that is not instantaneous must
be brought under the survival act; and both rights of
action for the same injury cannot exist at the same time.

4. DAMAGES—RAILROADS—FUTURE EARNINGS.

While the Michigan railroad liability act, Act No. 104,
Pub. Acts 1909, allows probable future earnings to be in-
cluded as damages if the death was not instantaneous, a
different rule prevails in the application of the Federal
act. U. S. Comp. Stat. 1913, §§ 8657-8665.

5. SAME—TRIAL—CHARGE.

Accordingly, the trial court erred in charging the jury,
under the Federal statute, that future earnings might be
taken into consideration in awarding damages.

[1]On constitutionality, application and effect of Federal em-
ployers' liability act, see notes in 47 L. R. A. (N. S.) 38, L. R.
A. 1915C, 47.

Error to Kent; Brown, J. Submitted June 30, 1915. (Docket No. 108.) Decided December 22, 1915.

Case by H. Chris Jorgensen, as administrator of the estate of Emil Ingmanson, deceased, against the Grand Rapids & Indiana Railway Company for the unlawful killing of plaintiff's decedent. Judgment for plaintiff. Defendant brings error. Reversed.

*James H. Campbell,* for appellant.

*Nichols & Shaw,* for appellee.

PERSON, J. Plaintiff's intestate was employed by defendant as a fireman upon one of its engines, and on the 17th day of June, 1912, while the train with which he was connected was distributing gravel and other material for the maintenance of defendant's roadbed and tracks, he received an injury, attributed to defendant's negligence, from which he died on the following day. The judgment in this action, which was brought because of such alleged negligence and consequential injury, was recovered by plaintiff under the provisions of the Federal employers' liability act of April 22, 1908 (35 U. S. Stat. 65), as amended by the Act of April 5, 1910 (36 U. S. Stat. 291). The original declaration, however, by which the action was begun, did not refer to the Federal act, nor did it, in express terms, charge that the defendant was engaged in interstate commerce, but, on the contrary, counted solely upon the Michigan railroad liability act (Act No. 104, Pub. Acts 1909) ; and it was not until the trial had been some time in progress, and more than two years after the right of action had accrued, that an amendment was made, bringing the case under the Federal act. It is conceded by both parties that the action should have been brought under that act originally, but the amendment was strongly objected to by defendant's counsel, not only on the ground that it

operated to introduce a new cause of action, but be-
cause, also, the two years' limitation for bringing the
action, embraced in the Federal act, had then inter-
vened. The right to this amendment raises the first
question argued before this court. The other questions
relate to the measure of damages under the Federal
law.

1. It was not error to permit the amendment. This
court has already said, in *Fernette* v. *Railroad, Co.,* 175
Mich. 653, 674 (144 N. W. 834, 835) :

"It should be borne in mind that the declaration sets
out.facts which would impose a liability upon defend-
ant under the Federal act, if it had charged that, at
the time of the collision, defendant was engaged in in-
terstate commerce. We are of opinion that it was not
necessary for plaintiff to plead either statute, but that,
upon the coming in of the proofs, it was the duty of
the trial court to permit an amendment of the plead-
ings to conform thereto."

Nor did the amendment introduce any new cause of
action. Congress is given power to regulate com-
merce between the States, and when it has acted, as
in passing the Federal employers' liability act, such
enactment becomes the general law of the land and
supersedes all State laws upon the same subject.
Therefore the reference to the State law in the decla-
ration might well have been struck out as surplusage,
and as if the reference had been to a law that had been
repealed. The charges of negligence and of injury
remained the same as before the amendment, and
stated in substantially the same words. Had there
been no allegation in the declaration that the defend-
ant was engaged in interstate commerce and that the
decedent was employed by it therein, the addition of
such matter to the declaration would have amounted
to simply an elaboration of the old matter, and not to
the introduction of new. *Gainesville, etc., R. Co.* v.
*Vandiver,* 141 Ga. 350 (80 S. E. 997). But the orig-

inal declaration in this case averred that the defendant owned, at the time of the injury, and was operating, a railway system extending through the States of Michigan and Indiana, and that the decedent was employed by it in the construction, repairing, and maintaining of the roadbed of such railway. This amounted to an allegation that the defendant was engaged in interstate commerce and that the decedent was employed by it in such commerce. *Ft. Worth, etc., R. Co.* v. *Stalcup* (Tex. Civ. App.), 167 S. W. 279. The Federal statute, as we have said, is a general law, as much in force in Michigan as anywhere, and therein this case differs from *Wingert* v. *Circuit Judge*, 101 Mich. 395 (59 N. W. 662), where it was attempted by amendment to plead a foreign law, and thereby to introduce into the declaration a cause of action that did not exist under our laws. Although the amendment, in the instant case, was made more than two years after the injury occurred, it stated no new cause of action, but related back to the original declaration, which was filed and served in due season so that the bar of the statute had not intervened. *Grand Trunk, etc., R. Co.* v. *Lindsay*, 233 U. S. 42 (34 Sup. Ct. 581, Am. & Eng. Ann. Cas. 1914C, 168) ; *Missouri, etc., R. Co.* v. *Wulf*, 226 U. S. 570 (33 Sup. Ct. 135, Am. & Eng. Ann. Cas. 1914B, 134) ; *Michigan, etc., R. Co.* v. *Vreeland*, 227 U. S. 59 (33 Sup. Ct. 192, Am. & Eng. Ann. Cas. 1914C, 176) ; *Smith* v. *Railroad Co.*, 210 Fed. 761 (127 C. C. A. 311) ; *Hogarty* v. *Railway Co.*, 245 Pa. 443 (91 Atl. 854) ; *Vandalia R. Co.* v. *Stringer*, 182 Ind. 676 (106 N. E. 865, 107 N. E. 673) ; *Flanders* v. *Railway Co.*, 68 Fla. 479 (67 South. 68).

2. But the trial court was in error in allowing the loss of future earnings to be included in the damages under the Federal act. This undoubtedly came from a misunderstanding of the construction given to that act by the Federal courts, and a natural inclination to

apply to it the construction given to various State statutes.

Under the law and practice of this State it has been held that the statute commonly called the "death act" (3 Comp. Laws, § 10427; 5 How. Stat. [2d Ed.] § 13702) is applicable only to cases of instantaneous death; that where death is not instantaneous the action should be brought under the so-called "survival act" (3 Comp. Laws, § 10117; 5 How. Stat. [2d Ed.] § 12761) ; and that both rights of action, for the same injury, cannot exist at the same time (*Oliver* v. *Railway Co.*, 134 Mich. 367 [96 N. W. 434, 104 Am. St. Rep. 607, 3 Am. & Eng. Ann. Cas. 53] ; *Storrie* v. *Elevator Co.*, 134 Mich. 297 [96 N. W. 569] ; *West* v. *Railway*, 159 Mich. 269 [123 N. W. 1101] ; *Ely* v. *Railway*, 162 Mich. 287 [127 N. W. 259] ). And while the "death act" is recognized as creating a new right of action, unknown to the common law, and authorizing damages with reference strictly to the pecuniary injury, suffered by certain beneficiaries, the "survival act" is treated as effecting a continuance of the right of action that had vested in the decedent, with such damages as he could have recovered, including the present worth of his probable future earnings had he lived. The Michigan railroad liability act of 1909 (Act No. 104, Pub. Acts 1909) has also been construed as allowing probable future earnings, in cases where death was not instantaneous, to be included among the damages in an action under that act. *Habitz* v. *Railroad Co.*, 170 Mich. 71 (135 N. W. 827).

The Supreme Court of the United States has taken a somewhat different view of the Federal employers' liability act. The first section of that act reads as follows:

"SECTION 1. That every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States

and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, tracks, roadbed, works, boats, wharves, or other equipment." 35 U. S. Stat. 65, U. S. Comp. Stat. 1913, § 8657.

Like our State statutes, this section provides for two distinct actions, one for the benefit of the employee himself where death is not instantaneous, and the other for the benefit of certain relatives whereby they are to receive compensation for their financial loss and damage resulting from the employee's death. But as the act originally stood it contained no provision for the survival of the action that might be brought by the employee himself, that right, of course, ending with his death. Subsequently the act was amended (Act of April 5, 1910, 36 U. S. Stat. 291), by adding the following section:

"SEC. 9. That any right of action, given by this act to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury." U. S. Comp. Stat. 1913, § 8665.

As the act now stands amended, there can, of course,

be but one action if the injury results immediately in the employee's death, and that is the action to compensate the relatives for their financial loss because of his death.  But when the injury does not result in immediate death the construction given to the act differs from that given to the State statutes, at least in this:  That the right of action for the benefit of the relatives does not depend upon the instantaneous death of the employee, but will arise whenever such death does occur, providing it results from the injury; and the right which the employee himself had to bring an action will survive, so that both rights will be in existence at the same time, and may be united by the personal representative in one action.  And when so united the personal representative will recover, not only compensation for such financial loss as the beneficiaries have suffered from the employee's death, but also such damages as the employee might have recovered, including those for pain and suffering, but not those for the loss of future earnings.

In *St. Louis, etc., R. Co.* v. *Craft*, 237 U. S. 648 (35 Sup. Ct. 704), the construction of the Federal act, and the theory upon which damages may be recovered under it, are very fully set forth.  The action in that case was brought by an administrator to recover for injuries to, and the death of, his intestate, and the damages sought to be recovered were for (*a*) the pecuniary loss to the father by reason of the death, and (*b*) conscious pain and suffering of the decedent before the injuries proved fatal.  The court, among other things, said:

"If the matter turned upon the original act alone, it is plain that the recovery here could not include damages for the decedent's pain and suffering, for only through a provision for a survival of his right could such damages be recovered after his death.  But the original act is not alone to be considered.  On April

5, 1910, prior to the decedent's injuries, the act was 'amended.' * * * No change was made in section 1 [U. S. Comp. Stat. 1913, § 8657]. *Taylor* v. *Taylor* 232 U. S. 363, 370 [34 Sup. Ct. 350]. It continues, as before, to provide for two distinct rights of action; one in the injured person for his personal loss and suffering where the injuries are not immediately fatal, and the other in his personal representative for the pecuniary loss sustained by designated relatives where the injuries immediately or ultimately result in death. Without abrogating or curtailing either right, the new section provides in exact words that the right given to the injured person 'shall survive' to his personal representative 'for the benefit of' the same relatives in whose behalf the other right is given. Brought into the act by way of amendment, this provision expresses the deliberate will of Congress. Its terms are direct, evidently carefully chosen, and should be given effect accordingly. It does not mean that the injured person's right shall survive to his personal representative and yet be unenforceable by the latter, or that the survival shall be for the benefit of the designated relatives and yet be of no avail to them. On the contrary, it means that the right existing in the injured person at his death—a right covering his loss and suffering while he lived but taking no account of his premature death or of what he would have earned or accomplished in the natural span of life—shall survive to his personal representative to the end that it may be enforced and the proceeds paid to the relatives indicated. And when this provision and section 1 are read together the conclusion is unavoidable that the personal representative is to recover on behalf of the designated beneficiaries, not only such damages as will compensate them for their own pecuniary loss, but also such damages as will be reasonably compensatory for the loss and suffering of the injured person while he lived. Although originating in the same wrongful act or neglect, the two claims are quite distinct; no part of either being embraced in the other. One is for the wrong to the injured person and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries and is confined to their pecuniary loss through his death. One begins where the other ends, and a recovery upon both in the

same action is not a double recovery for a single wrong, but a single recovery for a double wrong. * * *

"Much stress is laid upon the concluding clause in the new section, 'but in such cases there shall be only one recovery for the same injury.' Passing and reserving the question of its application where there has been a recovery by the decedent in his lifetime (see *Michigan, etc., R. Co.* v. *Vreeland, supra* [227 U. S. 59, 70, 33 Sup. Ct. 192, Am. & Eng. Ann. Cas. 1914C, 176]), we think this clause, as applied to cases like the present, is not intended to restrict the personal representative to one right to the exclusion of the other, or to require that he make a choice between them, but to limit him to one recovery of damages for both, and so to avoid the needless litigation in separate actions of what would better be settled once for all in a single action. This view gives full effect to every word in the clause and ascribes to it a reasonable purpose without bringing it into conflict with other provisions the terms of which are plain and unequivocal. Had Congress intended that the personal representative should make an election between the two rights of action and sue upon one only, it is not easy to believe that it would have chosen the words in this clause to express that intention."

The construction given to the Federal act by the Supreme Court of the United States is controlling. And because of the misconception of the trial court as to the scope of the act, thus construed, and as to the damages that may be recovered under it, its judgment is reversed, and a new trial granted.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

This case having been submitted on briefs, without oral argument, was reassigned after the death of Justice McALVAY.