WALKER v. IOWA CENT. RY. CO. et al.

(District Court, S. D. Iowa, Ottumwa Division. October 3, 1916. On Rehearing, March 16, 1917.)

No. 33.

1. MASTER AND SERVANT ⬳256(1)—INJURIES TO SERVANT—FEDERAL EMPLOYERS' LIABILITY ACT.

Under Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (Comp. St. 1916, §§ 8657–8665), declaring that every common carrier by railroad, while engaging in commerce between any of the several states, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employé, to his or her personal representatives, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its appliances, etc., a petition, to bring the cause of action within the statute, must allege that the carrier was engaged in interstate commerce at the time of the employé's injury, and that the employé was also so engaged at such time.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 809.]

2. MASTER AND SERVANT ⬳256(5)—INJURIES TO SERVANT—FEDERAL EMPLOYERS' LIABILITY ACT.

The original petition of a railroad employé alleged that the defendant railroad company was organized under the laws of Illinois, and operated a

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

railroad in and through the state of Iowa, that plaintiff was in the employ of the railroad company at its station as day operator, assisting in the loading and unloading of outgoing and incoming baggage, that defendant railroad company provided for such use a baggage truck, and that while plaintiff was pushing such truck in the performance of his duty on the platform to handle baggage for a train standing on the west side of the station, another train approached at a dangerous speed in violation of municipal ordinance, without signaling its approach, so that plaintiff was struck; his arm being crushed. Defendants admitted the allegations as to incorporation, etc. *Held*, that the complaint did not state a cause of action under the federal Employers' Liability Act, there being no allegation either that defendant or plaintiff was engaged in interstate commerce at the time of such injury, and hence plaintiff could not, more than two years after the accrual of the action, file an amended complaint stating a cause of action under the act, for it would state a new cause of action.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 815.]

3. COURTS ⬤═97(5)—PRECEDENCE—FEDERAL COURTS.
    A decision of the federal Supreme Court construing an act of Congress is controlling, not only upon the federal courts, but upon the state courts as well.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 332.]

At Law. Action by Allen H. Walker against the Iowa Central Railway Company and others. On demurrer to the amended petition. Demurrer sustained.

See, also, 203 Fed. 685, 121 C. C. A. 579; 231 U. S. 746, 34 Sup. Ct. 319, 58 L. Ed. 464.

The action was originally commenced in the state court August 30, 1909, and later removed by the railway company to the United States Circuit Court for this district. The action is to recover jointly from the defendant railway company, and Clarence Helm and J. W. Schreve, engineer and conductor, respectively, of one of its trains, damages for a personal injury alleged to have been suffered by the plaintiff and caused by the railway company and its said engineer and conductor, while plaintiff was moving a baggage truck along the platform of the depot at New Sharon, a station on the line of the railway company in Iowa. The injury occurred December 8, 1908; the plaintiff being then employed by the railway company as telegraph operator at New Sharon.

The cause was removed September 29, 1909, by the railway company to the Circuit Court, upon the alleged ground of a separable controversy between the railway company and the plaintiff, and the diversity of citizenship between them, the plaintiff being a citizen of Iowa and the railway company an Illinois corporation, and was tried in that court before the late Judge McPherson and a jury, resulting in a verdict and judgment for the plaintiff against all defendants in May, 1912. The cause was then taken by the railway company upon writ of error to the Circuit Court of Appeals for this circuit, where the judgment was reversed for an error in the instructions, February 26, 1913. 203 Fed. 685, 121 C. C. A. 579. Reference is made to that report for a full statement of the case. The plaintiff filed a petition for rehearing in the Court of Appeals, in which for the first time, it is said in argument, the question was raised that the cause of action arose under the Employers' Liability Act of Congress approved April 22, 1908 (35 Stat. 65), which petition was overruled May 15, 1913. A petition for certiorari was then presented by the plaintiff to the Supreme Court of the United States, which was denied October 20, 1913. 231 U. S. 746, 34 Sup. Ct. 319, 58 L. Ed. 464. The mandate from the Court of Appeals was then returned to and filed in this court October 25, 1913; the cause coming to this court upon the abolition of the United States Circuit Court.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

November 27, 1914, the plaintiff, with leave of court, filed in this court an amendment to the original petition, in which for the first time he sought to recover from the railway company upon the alleged ground that his cause of action arose under the Employers' Liability Act of Congress, to which amendment the defendant, on December 24, 1914, filed this demurrer, upon the ground that the cause of action set forth in said amended petition was barred both by the two-year limitation of the Employers' Liability Act and the statute of limitations of the state of Iowa.

McNett & McNett, of Ottumwa, Iowa, for the demurrer.

S. V. Reynolds and John N. McCoy, both of Oskaloosa, Iowa, opposed.

REED, District Judge (after stating the facts as above). [1] The Supreme Court of the United States has repeatedly stated and held what is necessary for an employé or his personal representatives to allege and prove to warrant a recovery under the Employers' Liability Act of Congress for an injury suffered by the employé while in the service of the carrier in such commerce. In Illinois Central Railroad Co. v. Behrens, 233 U. S. 473, 34* Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, Mr. Justice Van Devanter, speaking for the court, said of this question:

"Passing from the question of power [to enact the Employers' Liability Act] to that of its exercise, we find that the controlling provision in the act of April 22, 1908, reads as follows: 'Section 1. That every common carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employé, to his or her personal representative, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed.' * * * Giving to the words suffering injury while he is employed by such carrier in such commerce, their natural meaning, as we think must be done. it is clear that Congress intended to confine its action to injuries occurring when the particular service in which the employé is engaged is a part of interstate commerce. * * * There can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the employé is employed by the carrier in such commerce.' * * * 'The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?'"

And see C., B. & Q. R. Co. v. Harrington, 241 U. S. 177, 36 Sup. Ct. 517, 60 L. Ed. 941.

Two essential facts, therefore, are necessary for such a recovery: (1) The carrier, at the time of the injury, must be engaged in interstate commerce; and (2) the employé at the time of his injury must also be employed by the carrier in such commerce. Both the carrier and the employé must therefore, at the time of the injury of the latter, be engaged in such commerce, and it must be distinctly so alleged in the petition or complaint. Inasmuch as the carrier may be engaged in both interstate and intrastate commerce at the same time, there is difficulty in many cases in determining in advance of the trial that the carrier and the employé, at the time the latter suffers an injury, are each engaged in what is termed "interstate commerce by railroad," and

·much liberality is very properly exercised in the granting of amendments to pleadings to state the facts; but this must not be permitted to an extent that will defeat the substantial rights of either party.

[2] The cause of action as alleged in the original petition, upon which the cause was tried in the Circuit Court, is in two counts, and will be best understood by stating the substantial allegations thereof. Count 1, omitting the formal parts and repetitions, alleges in substance:

That the ·defendant Iowa Central Railway Company is a railway corporation organized under the laws of Illinois, and operates a line of railway in and through the state of Iowa, entering the state at a point on the Mississippi ·river near Oakville, thence running through several counties, including the counties of Mahaska and Poweshiek, and leaving the state at its northern boundary near the city of Northwood, Iowa; that defendants Helm and Schreve were at the times hereinafter mentioned employés of the railway company as engineer and conductor, respectively, in charge and control of one of its trains causing the injuries hereinafter referred to; that about the 8th day of December, 1908, this plaintiff was in the employ of the defendant railway company at its station in New Sharon, Mahaska county, Iowa, as day operator; that it was plaintiff's duty as a part of said employment to assist in the loading and unloading of outgoing and incoming baggage; that the defendant railway company provided for such use a vehicle commonly called a baggage truck; that the depot at New Sharon is located within the city limits of said city, and extends northward to a public thoroughfare which crosses the tracks of the defendant company; that the depot platform is nearly upon a level with the railroad tracks, and within about a foot of the rails thereof; that said depot is a public place, where people are invited to come, and where a great amount of business is transacted, and many passengers taken care of, and is a much-frequented place; that for about a mile to the north of said depot the track of the railway is practically straight and the view unobstructed; that on the date above mentioned one of the company's engines and train of cars were standing immediately west of the depot on what is known as the "Newton Branch"; that said engine was emitting steam and causing much noise; that there had been heavy snowfalls prior to December 8, 1908, accompanied with thaws and freezing, and the railway company negligently and carelessly permitted the snow and ice to accumulate upon the platform. Under these conditions the plaintiff in pursuance of his duties took the baggage truck (before mentioned) from a point on the platform at the north end of the depot and was pushing the same south through the snow and ice along the platform on the east side of the depot, in order to properly handle the baggage for the Newton train, standing on the west side of the depot; that while in the act of so doing, in the strict performance of his duties, and in the exercise of due care, one of the company's engines and trains in charge of defendants Helm and Schreve approached said station from the north at a high and dangerous rate of speed in violation of an ordinance of the town of New Sharon, without blowing the whistle, ringing the bell, or in any manner apprising the plaintiff or the people at the station of its approach, and while the defendant company and its codefendants were in a position to see the people, and it was their duty to see and look out for persons in or near the track while passing through the stations, and, so seeing and so knowing, the defendants negligently and carelessly, and without any regard to plaintiff's rights, ran said engine into the plaintiff, knocking him·down, from which he received permanent, dangerous, and serious injuries, crushing, bruising, and mangling the plaintiff's left arm to such an extent that amputation thereof was necessary to save his life; that by reason of the foregoing the plaintiff demands judgment against defendants in the sum of twenty thousand dollars.

Count 2 is in all essentials the same as count one. ,

The defendants separately answered both counts of the petition, admitting that the railway· company is a corporation organized under

the law of Illinois, and maintains and operates a railway line in and through the state of Iowa, as alleged; that at the time alleged the defendants Helm and Schreve were employés of the defendant company as engineer and conductor respectively; that about December 8, 1908, the plaintiff was in the employ of the railway company as day (telegraph) operator at its station at New Sharon—and deny all other allegations of the petition not expressly admitted, and further allege that plaintiff was guilty of contributory negligence which approximately caused such injury; and the railway company further avers that plaintiff upon entering its employ assumed the risks ordinarily incident to his employment, and that his injury was the result of a risk so assumed.

The "Newton branch," referred to in the petition, is understood to be a branch line running from New Sharon, or perhaps Oskaloosa, stations on the main line of the defendant company in Iowa, to New Sharon, and thence in a northwesterly direction to Newton, a point on the Rock Island road in Jasper county, Iowa, and though it is probable that this branch line may have been used by the defendant company in carrying interstate commerce, it is not so alleged, nor is the destination of the baggage which plaintiff was preparing to move when he was injured, alleged.

Aside from the foregoing allegations of the petition, and the admission of the railway company in its answer, there is no direct allegation that either the railway company or the plaintiff was engaged in interstate commerce at the time of the latter's injury, and it cannot be fairly said that the facts alleged show a cause of action under the federal Employers' Liability Act. If, however, the amended petition under consideration had been presented during the pendency of the action in the Circuit Court and before its determination in that court, it might very properly have been permitted to stand, and, if sustained by sufficient proof, would undoubtedly have supported a judgment under the act of Congress. But the case was not tried upon that theory, and counsel for plaintiff do not maintain in argument that the original petition shows that either the railway company or the plaintiff at the time of his injury was engaged in such commerce, but maintain the right notwithstanding to file the amended petition after the case had been finally determined by the Court of Appeals, so as to state a cause of action arising under the federal Employers' Liability Act, and base the right to do so upon M., K. & T. Co. v. Wulf, 226 U. S. 570, 33 Sup. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B, 134; decided January 6, 1913, and other similar cases. In that case it very clearly appears that Mrs. Wulf, the defendant in error, alleged in her original petition every essential fact to show a cause of action arising under the Employers' Liability Act to warrant a recovery by her under that act damages for the death of her son, save only the capacity in which she brought the action. Upon objection of the railway company that an amendment stating her right to maintain the action was too late, and that the cause was barred before it was filed, the Supreme Court said:

"It seems to us, however, that, aside from the capacity in which the plaintiff assumed to bring her action, there is no substantial difference between the original and amended petitions. In the former, as in the latter, it was

sufficiently averred that the deceased came to his death through injuries suffered while he was employed by the defendant railroad company in interstate commerce; that his death resulted from the negligence of the company"

—while it was also so engaged; and it is held that an amendment to a petition showing only the capacity in which one prosecutes a cause of action, without in any way modifying or enlarging the facts upon which it was originally brought, is not the statement of a new cause of action, and falls clearly within section 954 of the Revised Statutes of the United States (Comp. St. 1916, § 1591). This accords with the rule held in Cahill v. Railway Co., 137 Iowa, 577, 115 N. W. 216; and Myers v. Railway Co., 152 Iowa, 330, 131 N. W. 770, and other cases.

The Wulf Case is clearly distinguishable upon its facts from this. The original petition there stated facts which clearly alleged a cause of action under the Employers' Liability Act of Congress, and the amendment only alleged the right of the plaintiff, as administratrix of her deceased son, to bring the action under that act, made while the action was pending and but little more than a month after the two-year limitation of the Employers' Liability Act had expired. In the present case the action arose December 8, 1908, was founded upon the common law of negligence, for an injury to a servant by the negligence of the master; the case was tried and judgment rendered in the Circuit Court in May, 1912; the final decision of the Court of Appeals was May 15, 1913; the petition for certiorari denied by the Supreme Court October 20, 1913; the mandate from the Court of Appeals filed in this court October 25, 1913; and the amendment under consideration filed November 27, 1914, stating for the first time a cause of action based upon the Liability Act of Congress, a clear departure from the right of recovery alleged in the original petition, to a right of recovery under an act of Congress, and filed nearly six years after the cause of action arose. There seems to be no escape from the conclusion that, if the two-year limitation prescribed by the Employers' Liability Act, in which actions to recover thereunder must be brought, has any force, the cause of action alleged in this amendment was barred when the amendment of November 27, 1914, was filed, and cannot be maintained. Railway Co. v. Wyler, 158 U. S. 285, 296, 15 Sup. Ct. 877, 39 L. Ed. 983; Garrett, Administrator, v. L. & N. Ry. Co., 235 U. S. 308, 35 Sup. Ct. 32, 59 L. Ed. 242; Atlantic Coast Line Ry. Co. v. Burnette, 239 U. S. 199, 36 Sup. Ct. 75, 60 L. Ed. 226; Whalen v. Gordon, 95 Fed. 305, 309, 37 C. C. A. 70; Van de Haar v. Van Domseler, 56 Iowa, 671, 676, 10 N. W. 227; Box v. Railway Co., 107 Iowa, 660, 78 N. W. 694; Lang v. Choctaw, O. & G. R. Co., 198 Fed. 38, 45, 117 C. C. A. 146; Galesburg & E. Ry. Co. v. Hart, 221 Fed. 7, 12, 136 C. C. A. 533; Bravis v. C., M. & St. P. Ry. Co., 217 Fed. 234, 237, 133 C. C. A. 228.

In Railway Co. v. Wyler, 158 U. S. 290, 15 Sup. Ct. 879, 39 L. Ed. 983, above, Mr. Justice White stated the rule that must control in this case. He said:

"The legal principles by which this question must be solved are those which belong to the law of departure, since the rules which govern this subject afford the true criterion by which to determine the question whether there is a new cause of action in case of an amendment. In many of the states which have

adopted the code system great latitude has been allowed in regard to amendment; but even in those states it is held that the question of what constitutes a departure in an amended pleading is nevertheless to be determined by the rules of common law, which thus furnish the test for ascertaining whether a given amendment presents a new cause of action even although it be permissible to advance such new cause [of action] by way of an amendment. * * * "

In Whalen v. Gordon, 95 Fed. 305, 308, 37 C. C. A. 70, 74, Judge Sanborn, speaking upon the same question, said:

"An amendment to a petition which sets up no new cause of action or claim, and makes no new demand, but simply varies or expands the allegations in support of the cause of action already propounded, relates back to the commencement of the action, and the running of the statute against the claim so pleaded is arrested at that point. But an amendment which introduces a new or different * * * demand, not before introduced or made in the pending suit, does not relate back to the beginning of the action, so as to stop the running of the statute, but is the equivalent of a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed."

The situation of the plaintiff here is apparently much like that of the plaintiff in Garrett, Administrator, v. L. & N. Ry. Co., 235 U. S. 308, 35 Sup. Ct. 32, 59 L. Ed. 242, above, save that in that case the plaintiff was given opportunity by both the trial court and the Circuit Court of Appeals to so amend his petition as to show his right to recover under the Liability Act of Congress, but declined to do so, and the judgment accordingly went against him. The Supreme Court denied an application to remand the case that such amendments might be made, saying:

"The request is now made that in view of all the circumstances—especially the former undetermined meaning of the statute—this court remand the cause for a new trial upon the declaration being so amended as to include the essential allegation. But we do not think such action would be proper. The courts below committed no error of which just complaint can be made here; and the rights of the defendant must be given effect, notwithstanding the unusual difficulties and uncertainties with which counsel for the plaintiff found himself confronted."

Counsel for plaintiff urge in argument that the question involved upon this demurrer is one solely of state practice and procedure, and cite in support of such contention, the following cases: Basham v. Chicago G. W. Ry. Co. (Iowa) 154 N. W. 1019, on rehearing 157 N. W. 192; Knight v. Railway Co., 160 Iowa, 160, 140 N. W. 839; Collins v. People's Power Co., 223 Fed. 47, 138 C. C. A. 411 (Court of Appeals this Circuit); and some others. It is sufficient to say of all of these cases that they involve a construction of the statute of limitations of the state of Iowa or other local statutes or rules of practice in that state. In Knight v. Railway Co., 160 Iowa, 160, 140 N. W. 839, the cause of action arose under a statute of Illinois, and the question involved was whether or not the action was commenced in Iowa within the time required by the statute of Illinois to recover damages under the Illinois statute, and was therefore a construction of the statute of Iowa as to how and when an action in that state is to be commenced.

241 F.—26

The cause of action in Collins v. People's Power Co., 223 Fed. 47, 138 C. C. A. 411, also arose under the same Illinois statute involved in the Knight Case. The Court of Appeals, this Circuit, simply followed the rule in the Knight Case, upon the ground that the construction of the Iowa statute in that case was controlling upon the federal courts in Iowa. In the Basham Case it was held that an amendment which defendant challenged as stating a new cause of action, if necessary at all, simply enlarged or made more specific the allegations of the original petition.

[3] Whatever may be said of the Knight Case and other Iowa cases, they have no controlling effect upon the federal courts in Iowa, or elsewhere for that matter, where the cause of action is based upon an act of Congress; for the opinion of the Supreme Court of the United States construing the Employers' Liability Act, or other acts of Congress, is controlling not only upon the federal courts, but the state courts as well upon the construction and interpretation of the laws of Congress. Central Vermont Ry. Co. v. White, 238 U. S. 507, 511, 35 Sup. Ct. 865, 867 (59 L. Ed. 1433, Ann. Cas. 1916B, 252) and the cases there cited. In this case Mr. Justice Holmes, speaking for the Supreme Court upon this question, said:

"There can, of course, be no doubt of the general principle that matters respecting the remedy—such as the form of the action, sufficiency of the pleadings, rules of evidence, and the statute of limitations—depend upon the law of the place where the suit is brought. McNiel v. Holbrook, 12 Pet. 84 [9 L. Ed. 1009]. But matters of substance and procedure must not be confounded because they happen to have the same name. For example, the time within which a suit is to be brought is treated as pertaining to the remedy. But this is not so if, by the statute giving the cause of action, the lapse of time not only bars the remedy but destroys the liability. Phillips v. Grand Trunk Ry., 236 U. S. 662 [35 Sup. Ct. 444, 59 L. Ed. 774]; Boyd v. Clark (C. C.) 8 Fed. 849; Hallowell v. Harwick, 14 Mass. 188; Cooper v. Lyons, 77 Tenn. (9 Lea) 597; Newcomb v. The Clermont No. 2, 3 G. Greene (Iowa) 295. In that class of cases the law of the jurisdiction, creating the cause of action and fixing the time within which it must be asserted, would control, even where the suit was brought in the courts of a state which gave a longer period within which to sue."

The demurrer to the amended petition filed November 27, 1914, should be and is sustained; and it is so ordered.

## On Rehearing.

The plaintiff has filed a motion to set aside the ruling sustaining the demurrer to the amended petition of November 27, 1914, and to overrule said demurrer.

The case of Seaboard Air Line Railway v. Renn, 241 U. S. 290, 36 Sup. Ct. 567, 60 L. Ed. 1006, is cited in support of the motion, and it is said in plaintiff's brief "that the amended petition of November 27, 1914, is squarely within the Renn Case." In that case the suit was brought in a state court of North Carolina; the original petition was very brief, but alleged "that the defendant was operating a line of railroad in Virginia, North Carolina, and elsewhere, that the plaintiff was in its employ, that when he was injured he was in the line of duty and was proceeding to get aboard one of the defendant's trains, and that

the injury was sustained at Cochran, Va., through the defendant's negligence, etc." During the trial the defendant sought some advantage because the complaint did not sufficiently allege that at the time of the injury the defendant was engaged and the plaintiff employed by it in interstate commerce, and the trial court upon motion of the plaintiff permitted the petition to be so amended as to state specifically that the defendant was engaged and the plaintiff employed by it in such commerce, and it was conceded by both parties that what was alleged in the amendment was true in fact and conformed to the proofs, and that point was thereafter treated as settled. The Supreme Court said:

"Of course, the right of action could not arise under the laws of North Carolina, when the causal negligence and the injury occurred in Virginia; and the absence of any mention of the laws of the latter state was at least consistent with their inapplicability. * * * In these circumstances, while the question is not free from difficulty, we cannot say that the court erred in treating the original complaint as pointing, although imperfectly, to a cause of action under the law of Congress. And, this being so, it must be taken that the amendment merely expanded or amplified what was alleged in support of that cause of action and related back to the commencement of the suit," etc.

The facts alleged in the original petition, however, show inferentially at least that the railway company was engaged in interstate commerce, and that the plaintiff was injured through its neglect while in the line of his duty as an employé in such commerce, and the amendment which the trial court allowed only stated more in detail the engagement of the defendant and the employment of the plaintiff by it in such commerce. Furthermore the amendment was applied for and allowed during the trials and before the verdict, to conform the pleadings to the proofs. In the present case it may be admitted that the petition sufficiently alleges that the defendant railway company was operating a line of railroad in and through the states of Illinois and Iowa; but there is an entire absence of any allegation that the train on the branch line between New Sharon and Newton, both points in Iowa, was a train running from points in Iowa to points beyond that state, which it is alleged was negligently handled by defendant's employés; nor is there a word to indicate that the plaintiff was employed in operating that train, or any other train of the defendant, in interstate commerce, or that the baggage he was handling was to be carried in such commerce. Further than this the request to file the amendment of November 27, 1914, was not made; and the same was not filed until more than a year after the case was finally determined in the Court of Appeals, and a petition for rehearing in that court, and for certiorari in the Supreme Court of the United States, had each been denied, and some six years after the injury. I am unable to believe that under those circumstances an amendment to the petition filed at such late date can save the cause of action first alleged therein from the bar of the statute under the act of Congress or the statute of the state of Iowa.

The petition or motion for rehearing must be and is denied. It is accordingly so ordered, and plaintiff excepts.